# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: **MICHELLE MARIE SANTOS ROBLES**<br>SSN xxx-xx-2775<br><br>Debtor(s) | CASE NO: **18-04636-ESL**<br><br>**Chapter 13** |

## TRUSTEE'S OBJECTION TO PROPOSED POST CONFIRMATION PLAN MODIFICATION UNDER SECTION 1329

*ATTORNEY FEES AS PER R 2016(b) STATEMENT:

Attorney of Record: **ROBERTO FIGUEROA CARRASQUILLO***

Total Agreed: **$3,000.00**    Paid Pre-Petition: **$232.00**    Outstanding (Through the Plan): **$0.00**

*TRUSTEE'S POSITION RE CONFIRMATION UNDER U.S.C. §1329

Debtor's/s' Commitment Period: ☒ Under Median Income 36 months   ☐ Above Median Income 60 months §1325(b)(1)(B)
Projected Disposable Income: **$0.00**

**Liquidation Value:$0.00   Estimated Priority Debt: $0.00**

If the estate were liquidated under Chapter 7, nonpriority unsecured claims would be paid approximately $0.00

With respect to the Proposed "PCM": Dated **2/2/2023**   **(Dkt  49)**   Plan Base: **$36136.00**

**The Trustee:**  ☐ **DOES NOT OBJECT**  ☒ **OBJECTS**  **Plan Confirmation**   Gen. Uns. Approx. Dist.:**16.77%**

**The Trustee objects to confirmation for the following reasons:**

[1325(a)(1)] Failure to comply with her/his/their duties.[11 U.S.C.704(a)(4) and 1302(b)(1)]

The Trustee requests the W2 for year 2022 for evaluation.
Debtor must also submit evidence of actual income (January and February 2023) for evaluation.

The Trustee also requests copies of debtor's bank statements for the past 6months for evaluation.

[1325(a)(3)] Plan NOT proposed in good faith.

Debtor filed her Chapter 13 Voluntary Petition on August 16, 2018. Docket no. 1. Per Debtor's Schedule I, Debtor was a cashier at Supermercados Amigos and she made $1,224.56 gross a month, or $14,694.72 gross a year. The Docket reveals that, until recently, Schedule I had not been amended.

Debtor's plan, dated October 25, 2018, was confirmed on November 20, 2018. Docket no. 23. The Trustee notes that the order confirming the plan includes the following language: "7. Debtor(s) has

(have) a continuing obligation, during the term of the plan, to report to the Court, thru the pertinent motion or amendment to schedules, any change to the (their) financial/economic circumstances, particularly income increase or decreases and the acquisition of assets by whatever means."

Debtor submitted 2018-2021 tax returns for evaluation and the Trustee hereby informs the Court that such documents revealed that Debtor failed her ongoing obligation to disclose changes in circumstances

and, in so doing, failed to comply with the terms included in the order confirming the plan.

Per 2019 tax return, debtor reported having made $2,413.91 gross a month or $28,966.92 gross that year. Per 2020 tax return, debtor reported having made $2,878.58 gross a month or $34,651.00 gross that year. Per 2021 tax return, debtor reported having made $3,150.00 gross a month or $37,800.00 gross that year. Debtor's w2 form for year 2022 has not been produced, hence, there might be even more additional income that not been accounted for.

The proposed plan fails to include the extra income Debtor generated, and retained without court authorization, during the life of the plan. Debtor's proposed plan also fails to include tax refunds generated received during years 2018-2021.

Debtor's failure to disclose changes in her financial situation went against the interests of the general unsecured creditors in the case who, under the terms of the confirmed plan, are only receiving 4% of their claims. Under the terms of the proposed plan modification, creditors would be receiving only 16% of their claims. If Debtor is allowed to successfully complete her plan, Debtor would be discharging approximately $19,000.00 in general unsecured debt, which the Trustee objects. With the extra unreported income generated, Debtor could have paid in full her unsecured debt. The Trustee also brings to the Court's consideration that in addition to the unreported income Debtor has also had available numerous COVID related incentives which are not income for bankruptcy purposes.

When determining whether a Debtor has acted in "good faith", the Court must examine the "totality of circumstances". Under the "totality of the circumstances test," the Courts must consider (1) debtor's accuracy in stating the debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the court and whether debtor has made any misrepresentations, (3) whether the bankruptcy code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable under a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. In re Baldassaro, 338 BR 178 (Bkrptcy. D.N.H. 2006), In re Sullivan, 326 BR 204 (1st Cir. 2005).

The totality of the circumstances reveal that Debtor's Post Confirmation Plan Modification was not filed in good faith. Debtor's PCM fails to consider the fact that the first step up should have been made on month 2 instead of month 13. This deprived the estate of at least $3,410.00($310 related to the step up x 11 months). Debtor claims that she forgot to inform to her counsel that she had changed her job and that her income had increased. She argued that even when the step up was not made in the correct month, debtor demonstrated good faith because her plan provided A step up. The Trustee respectfully disagrees with Debtor's argument. Debtor expected to change her job at some point and a step up was included in the plan. Such step up in month 13 did not relieve debtor from her obligation to promptly disclose the favorable change in her financial situation, which was on month 2 of the plan. Also, such step up in month 13 did not mean that Debtor could retain, and dispose of, additional income without Court authorization.
Debtor's forgetfulness should not be accepted as a valid excuse for depriving creditors from the increased distribution they were entitled to receive. A debtor that fails to disclose a considerable increase in income cannot be considered to be an honest debtor.

"[T]here is no "Oops" defense to the concealment of assets." Marrama v. Citizens Bank of Massachusetts, 549 U.S. at 370, 127 S.Ct. 1105. "When a debtor files [his] Schedules, [ ]he does so under the equivalent of an oath." In re Crawford, 841 F.3d 1, 7 (1st Cir. 2016). "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." In re Wood, 291 B.R. 219, 226 (1st Cir. BAP 2003). The duty to disclose is continuous throughout the pendency of the bankruptcy case. See Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n, 932 F.Supp. 859, 867 (E.D. Tex. 1996) ("[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action"); In re Adams, 481 B.R. 854, 858 (Bankr. N.D. Miss. 2012) (same);

Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) ("The duty to disclose in a continuing one that does not end once the forms are submitted ... [f]ull and honest disclosure in a bankruptcy case is 'crucial to the effective function of the federal bankruptcy system' "); In re Roberts, 556 B.R. 266, 275 (Bankr. S. D. Miss. 2016) (a "[d]ebtor's duty to disclose is absolute"). In re Lopez Llanos (Bankr. D.P.R. 2017).

Furthermore, the PCM fails to include the extra income that was generated since year 2019 and tax refunds received during years 2018-2021. The Trustee brings to the Court's attention that with the unreported income, Debtor could have paid the unsecured creditors 100% of their claims, which makes the 19% distribution under the proposed PCM unacceptable.

[1325(a)(6)] Payment Default Feasibility – Debtor(s) is in default with proposed plan payments, to the trustee and/or creditor(s).

Debtor has also failed to pay the 2018-2021 tax refunds in compliance with the terms of the confirmed plan. Debtor's use of such refunds is contested at the present time.

Given the facts of the case, the Trustee continues to object Debtor's request to retain 2018-2021 tax refunds. Such funds are property of the estate under Section 1306 of the bankruptcy code. The confirmed plan included a wording stating that such funds would be surrendered to fund the plan and that, in the event that the funds were needed, authorization would be requested prior to the use of the same. It has already been established that the terms in a plan are binding for all parties upon the entry of an order confirming the plan. Debtor's request to ratify the unauthorized use of funds is evidence of her failure to comply with the provision she voluntarily included in the plan. Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In re Diruzzo, 527 B.R. 800, 805 (B.A.P. 1st Cir. 2015)

Furthermore, Debtor's income increased exponentially during the life of the case. That, and the fact that during the past years debtor also received numerous COVID related incentives from the government, further highlights how unreasonable and unjustified her request to retain the 2018-2021 tax refunds is.

In her Reply to Trustee's Motion Requesting Entry of Order, Debtor requested the Court to consider other circumstances surrounding the issue at hand as "the 2020 COVID pandemic and the extraordinary expenses related to this emergency, the increase in cost of living and the composition of debtor's household." Debtor has failed to submit any evidence to support having had any extraordinary expense related to the COVID pandemic and how the increase in the cost of living has affected her. On the contrary, Debtor's amended Schedules I and J reveal that even with the increase in the cost of living, Debtor still had more money available to fund the plan, which resulted in an increased plan payment for the remaining life of the plan.

The tax returns reveal that Debtor was among the blessed people who were economically benefitted during the COVID pandemic. Debtor's tax returns reveal that her income more than doubled during the pandemic years and on top of the increased income, she also received incentives from the government to offset the extraordinary covid related expenses and increases in cost of living. This case does not picture an unfortunate debtor who struggled to make ends meet. On the contrary. This case has a debtor who has been comfortable during the life of the case administrating a considerable amount of unreported income in detriment of the estate.

It has already been decided that "'[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth.'" citing In re Arnold, 869 F. 2d 240, 243 (4th Cir. 1989). Debtor is not paying her creditors the most that she can pay, which in this case could have been 100% of the general unsecured debts. For such reason, it is the Trustee's position that both, debtor's request to retain tax refunds, and the proposed PCM, should be denied.

[1325(b)(1)(B)] Projected Disposable Income – Debtor(s) fails to apply projected disposable income, to be received during applicable commitment period, to make payments to unsecured creditors under the plan. [1322(a)(1)]

- Unreasonable or unwarranted expenses.

The following expenses appear to be overstated for a household size of 1.
Electricity ($288.00), Water ($78.00), Telephone ($189.00), Food ($648.00), Personal care ($141.00).

Evidence to support these expenses must be submitted for evaluation.
The Trustee will evaluate the requested evidence since it has already been decided that the unjustified increase in expenses in order to consume new disposable income is an indication of lack of good faith. "Amended plan lacked good faith when expenses were pumped up to consume new disposable income that resulted from mortgage modification". See In re Hardcastle v. Greer, 2013 WL 5944042 (BAP 9th Cir. Nov. 7, 2013).

*OTHER COMMENTS / OBJECTIONS

NONE.

**NOTICE**
**14 day notice**: Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE**: The Chapter 13 Trustee herewith certifies that a copy of this motion has been served via first class mail on the same date it is filed to: the DEBTOR(S), and to her/his/their attorney throught CM-ECF notification system.

/s/ Jose R. Carrion, Esq.
**CHAPTER 13 TRUSTEE**
PO Box 9023884, San Juan PR 00902-3884
Tel. (787)977-3535 Fax (787)977-3550

Date: February 14, 2023

/s/ Nannette Godreau, Esq.

Last Docket Verified: 53    Last Claim Verified: 7    CMC: