```
                  UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| **IN RE:** | |
| **MICHELLE MARIE SANTOS ROBLES** | **CASE NO. 18-04636-ESL** |
| XXX-XX-2775 | **CHAPTER 13** |
| **DEBTOR (S)** | |

**TRUSTEE'S POSITION IN COMPLIANCE WITH COURT ORDER**

**TO THE HONORABLE COURT:**

**NOW COMES**, José R. Carrión, Standing Chapter 13 Trustee (hereinafter, the "Trustee"), through the undersigned attorney, very respectfully alleges and prays:

1. Debtor filed her Chapter 13 Voluntary Petition on **August 16, 2018**. Docket no. 1. Per Debtor's Schedule I, Debtor was a cashier at Supermercados Amigos and **she made $1,224.56 gross a month, or $14,694.72 gross a year**. The Docket reveals that, until recently, Schedule I had not been amended.

Debtor's plan, dated October 25, 2018, was confirmed on November 20, 2018. Docket no. 23. Such plan included a language stating that tax refunds would be surrendered to fund the plan and that, in the event that the funds were needed, authorization would be requested **prior** to the use of the same. It has already been established that the terms in a plan are binding for all parties upon the entry of an order confirming the plan. Debtor's request to ratify the unauthorized use of funds is evidence of her failure to comply with the provision she voluntarily included in the plan. Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In re Diruzzo, 527 B.R. 800, 805 (B.A.P. 1st Cir. 2015)

The Trustee notes that the order confirming the plan includes the following language: "7. Debtor(s) has (have) a continuing obligation, during the term of the plan, to report to the Court, thru the pertinent motion or amendment to schedules, any change to the (their) financial/economic circumstances, particularly income increase or decreases and the acquisition of assets by whatever means."

2. On December 12, 2022, Debtor filed a Motion Requesting the Entry of an Order Ratifying the Use of 2018-2021 tax refunds since the funds were used to cover some extraordinary expenses. Docket no. 34.

3. On December 19, 2022, the Trustee filed an Objection to Debtor's Request and Request for Order. Docket no. 42. The Trustee brought to the Court's attention that Debtor submitted 2018-2021 tax returns for evaluation and that such documents revealed that Debtor failed her ongoing obligation to disclose changes in circumstances. Consequently, the Trustee argued that Debtor's Motion Requesting authorization to retain tax refunds should be denied. Per **2019** tax return, debtor reported having made **$2,413.91 gross a month or $28,966.92 gross that year**. Per **2020** tax return, debtor reported having made **$2,878.58 gross a month or $34,651.00 gross that year**. Per **2021** tax return, debtor reported having made **$3,150.00 gross a month or $37,800.00 gross that year**. Debtor's failure to disclose changes in her financial situation went against the terms of the order confirming the plan and the interests of the general unsecured creditors in the case who are only receiving **4%** of their claims. Furthermore, the Trustee informed that if Debtor is allowed to successfully complete her plan, Debtor would be discharging approximately **$19,000.00 in general unsecured debt. With the extra unreported income generated, Debtor could have paid in full her unsecured debt.** The Trustee also invited the Court to consider that, in addition to the unreported income generated during years 2019-2021, Debtor also had available numerous COVID related incentives, which are not income for bankruptcy purposes, and could have been used to offset the extraordinary expenses she sought to cover with the tax refunds requested. It was the Trustee's position that the facts of the case revealed that Debtor's request was both unreasonable and unjustified, and for such reason the Trustee objected the same. The Trustee also requested that Debtor be ordered to file amended Schedules I and J and plan revealing her actual financial situation and show cause as to why the case should not be dismissed upon her failure to disclose a change in her financial circumstances in compliance with the terms of the order confirming the plan.

4. On February 2, 2023, Debtor filed a Reply to Trustee's Position and Objection. Docket no. 51. Debtor claimed that she forgot to inform to her counsel that she had changed her job and that her income had increased. She argued that even when the step up was not made in the correct month, debtor demonstrated good faith because her plan provided A step up. Debtor requested the Court to consider other circumstances surrounding the issue at hand as "the 2020 COVID pandemic and the extraordinary expenses related to this emergency, the increase in cost of living and the composition of debtor's household." Debtor is a single debtor living alone. Debtor argued that a Post Confirmation Plan Modification was filed increasing plan payments for the remaining life of the case and agreeing to surrender whatever amount she receives as a refund for year 2022. It is debtor's contention that, considering the totality of the circumstances, Debtor acted in good faith and that she should be allowed to retain the tax refunds in question.

5. On February 3, 2023, the Court entered the following order: ORDER: The trustee is to state his position within twenty-one (21) days as to Debtors reply filed on February 2, 2023 (Docket Entry #51). Docket no. 52.

6. In compliance with Court order the Trustee hereby informs that, given the facts of the case, the Trustee continues to object Debtor's request to retain 2018-2021 tax refunds. Such funds are property of the estate under Section 1306 of the bankruptcy code. The confirmed plan included a wording stating that such funds would be surrendered to fund the plan and that, in the event that the funds were needed, authorization would be requested **prior** to the use of the same. It has already been established that the terms in a plan are binding for all parties upon the entry of an order confirming the plan. Debtor's request to ratify the unauthorized use of funds is evidence of her failure to comply with the provision she voluntarily included in the plan and for such reason, should not be allowed. Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In re Diruzzo, 527 B.R. 800, 805 (B.A.P. 1st Cir. 2015).

Furthermore, Debtor's income increased exponentially (more than doubled) during the life of the case. That, and the fact that during the past years debtor also received numerous COVID related incentives from the government, further highlights how unreasonable and unjustified her request to retain the 2018-2021 tax refunds is.

In her Reply to Trustee's Motion Requesting Entry of Order, Debtor requested the Court to consider other circumstances surrounding the issue at hand as "the 2020 COVID pandemic and the extraordinary expenses related to this emergency, the increase in cost of living and the composition of debtor's household." Debtor has failed to submit any evidence to support having had any extraordinary expense related to the COVID pandemic and how the increase in the cost of living has affected her. On the contrary, Debtor's amended Schedules I and J reveal that even with the increase in the cost of living, and what appear to be inflated expenses in Schedule J, when Debtor considered in her budget her increased income, Debtor still had more money available to fund the plan, which resulted in an increased plan payment for the remaining life of the plan. Had debtor complied with her ongoing obligation to disclose changes in her financial circumstances, creditors would have benefited from debtor's good fortune. That was not the case.

On that same note, the tax returns reveal that Debtor was among the blessed people who were economically benefitted during the COVID pandemic. Debtor's tax returns reveal that her income more than doubled during the pandemic years and on top of the increased income, she also received incentives from the government to offset extraordinary covid related expenses and increases in the cost of living. This case does not picture an unfortunate debtor who struggled to make ends meet. On the contrary. This case has a debtor who has been comfortable during the life of the case administrating a considerable amount of unreported income in detriment of the estate.

Regarding Debtor's argument related to her having acted in good faith even when she forgot to inform an increase in her income, the Trustee once again respectfully disagrees with the Debtor. It is true that since the beginning of the case Debtor expected to change her job at some point within the first year of the case and, for such reason, a step up was included in the plan starting on month 13. Such step up in month 13 did not relieve debtor from her obligation to promptly disclose the favorable change in her financial situation, which happened on month 2 of the plan. Also, such step up in month 13 did not mean that Debtor could retain, and dispose of, additional unreported income without Court authorization.

Debtor's forgetfulness should not be accepted as a valid excuse for depriving creditors from the increased distribution they were entitled to receive. A debtor that fails to disclose a considerable increase in income cannot be considered to be an honest debtor. Also, retaining copious amounts of unreported income without a valid justification, and still pretend to obtain a discharge of her debts is a manipulation of the bankruptcy process which should not be allowed by the Court. Moreover, Debtor's "forgetfulness" defense is not a valid defense since the Court's have already decided that "there is no "Oops" defense to the concealment of assets." Marrama v. Citizens Bank of Massachusetts, 549 U.S. at 370, 127 S.Ct. 1105. "When a debtor files [his] Schedules, [ ]he does so under the equivalent of an oath." In re Crawford, 841 F.3d 1, 7 (1st Cir. 2016). "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." In re Wood, 291 B.R. 219, 226 (1st Cir. BAP 2003). The duty to disclose is continuous throughout the pendency of the bankruptcy case. See Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n, 932 F.Supp. 859, 867 (E.D. Tex. 1996) ("[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action"); In re Adams, 481 B.R. 854, 858 (Bankr. N.D. Miss. 2012) (same);?Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) ("The duty to disclose in a continuing one that does not end once the forms are submitted ... [f]ull and honest disclosure in a bankruptcy case is 'crucial to the effective function of the federal bankruptcy system' "); In re Roberts, 556 B.R. 266, 275 (Bankr. S. D. Miss. 2016) (a "[d]ebtor's duty to disclose is absolute"). In re Lopez Llanos (Bankr. D.P.R. 2017).
The totality of the circumstances herein discussed reveal that the debtor failed her ongoing obligation to disclose changes in her

financial circumstances, that such omission went against the best interests of creditors in the case and that she did not act in good faith.

7. Finally, it has already been decided that "'[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth.'" citing In re Arnold, 869 F. 2d 240, 243 (4th Cir. 1989). Debtor is not paying her creditors the most that she can pay, which in this case could have been 100% of the general unsecured debts. For such reason, it is the Trustee's position that debtor's request to retain tax refunds should be denied.

**WHEREFORE,** the Trustee respectfully requests that the Court take note of the aforementioned, deem the order in docket no. 52 complied, deny Debtor's Motion Requesting Authorization to Retain 2018-2019 tax refunds and order Debtor to show cause as to why the case should not be dismissed upon his failure to disclose an increase in income during the life of the case.

**CERTIFICATE OF SERVICE**: The Chapter 13 Trustee herewith certifies that a copy of this motion has been served via first class mail on the same date it is filed to: the DEBTOR(S), and to her/his/their attorney through CM-ECF notification system.

**NOTICE 14 day notice**: Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**Respectfully submitted,**

In San Juan, Puerto Rico, this **February 14, 2023.**

/s/ **Nannette Godreau**

Staff Attorney
USDC No. 227310
**JOSÉ R. CARRIÓN-MORALES**
CHAPTER 13 TRUSTEE
P.O. Box 9023884
San Juan, P.R. 00902-3884
ngodreau@ch13-pr.com
Tel: (787) 977-3535
Fax: (787) 977-3550