IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

MICHELLE MARIE SANTOS ROBLES

DEBTOR

CASE NO 18-04636 ESL

CHAPTER 13

**DEBTOR'S MEMORANDUM OF LAW**
**RE: DEBTOR'S REPLY TO *TRUSTEE'S OBJECTION TO PROPOSED PLAN***
***MODIFICATION UNDER SECTION 1329*, Docket No. 54 and to the *TRUSTEE'S***
***POSITION IN COMPLIANCE WITH COURT ORDER*, Docket No. 55.**

TO THE HONORABLE COURT:

COMES NOW, **MICHELLE MARIE SANTOS ROBLES**, the Debtor in the above captioned case, through the undersigned attorney, and very respectfully states and prays as follows:

1. This case is before the Court upon the *Debtor's Motion Requesting Order Re: Ratification of the Use of Funds From 2018, 2019, 2020 and 2021 Tax Refunds* (Docket No. 38), the *Debtor's Motion for Post-Confirmation Modification of Chapter 13 Plan* (Docket No. 49), the *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order* (Docket No. 42) the *Trustee's Objection to Plan Modification Under Section 1329* (Docket No. 54) and the *Trustee's Position in Compliance With Order* (Docket No. 55) alleging that the Debtor failed her ongoing obligation to disclose changes in circumstances, specifically an increase in her [the Debtor's] salary income and that, consequently, a Debtor's motion requesting authorization to retain tax refunds should be denied and the Court to Order the Debtor to show cause why the present case should not be dismissed .

**Procedural background**

2. On August 16, 2018 the Debtor filed for protection under Chapter 13, 11 U.S.C. Sections 1301 *et seq.*, in the above captioned case. *See*: *Voluntary Petition*, Docket No. 01.

3. The Debtor is a single debtor (number of people in household: 1 ) and a "below median income debtor". *See*: *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period*, Official Form 122C-1, Docket No. 01.

4. If the estate of the Debtor were liquidated under Chapter 7, non-priority unsecured claims would be paid $0.00. This is a zero ($0.00) "liquidation value" case. *See*: *Schedules A/B and C*, Docket No. 01.

5. As of August 16, 2018, the date of the filing the present Chapter 13 petition, the Debtor was employed as a "cashier" for *Amigo Supermarkets*, earning $1,224.56 gross per month. *See*: *Schedule "I"*, Official Form 106I, Docket No. 01.

6. The Debtor's proposed original *Chapter 13 Plan* (Docket No. 03) provides for the following payment schedule: $300.00 for 12 months and $550.00 for 48 months for a total base of $30,000.00. *See*: *Chapter 13 Plan* dated 08/16/2018, Part 2 Section 2.1 (Docket No. 03).

7. On September 19, 2018, at the scheduled 341 meeting, the Chapter 13 Trustee asked the Debtor to explain what was the source of funds to cover for the Plan payment "step-up" at month 12th of the proposed Plan and the Debtor responded that she [the Debtor] was looking for a new job since she had recently obtained a college degree (as a nurse) which would allow her to change her financial circumstances by obtaining a better job and therefore, increase the Plan payments to the Trustee and comply with the proposed payment schedule. *See*: 341 meeting minutes dated September 21, 2018 (Docket No. 16), and its digital recording.

8. In October 23, 2018 the Debtor commenced working for the Puerto Rico Department of Education as a "School Nurse". The Debtor held her part-time job until December, 2018 since the Debtor received her 1st pay-check on November 30, 2018 from her new job at the Department of Education. The Debtor's 2018 tax return reflects that the Debtor earned income in the total sum of $15,137.00, working for 3 different jobs during the year 2018. *See*: Debtor's 2018 tax return filed with the Treasury Department and a copy of a *Contract Information Certification* ("*Información del Contrato*") dated October 22, 2018 issued by the Department of Education of Puerto Rico.

9. On November 20, 2018, the Debtor's proposed *Amended Chapter 13 Plan*, Docket No. 19 was confirmed by the Court. *See*: *Order Confirming Plan*, Docket No. 23.

10. The confirmed Plan (Docket No. 19) provides for $300.00 for 12 months and $610.00 for 48 months for a total base of $32,880.00. See: *Amended Chapter 13 Plan*, Part 2, Section 2.1, dated 10/25/2018, Docket No. 19.

11. The Debtor's confirmed Plan (Docket No. 19) provides for the Debtor to supply the Trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will comply with 11 U.S.C. Section 1325(b)(2). If the Debtor needs to use all or a portion of such "tax refunds" the Debtor shall seek Court authorization prior to any use thereof. *Amended Chapter 13 Plan* Part 2, Section 2.3 and Part 8, Section 8.4, dated 10/25/2018, Docket No. 19.

12. The Debtor's tax refund for the year 2018 in the sum of $226.00 was received by the Debtor in 2019. *See*: Debtor's 2018 tax return filed with the Treasury Department.

13. In October 2019, the Debtor increased her Plan payment from $300.00 to $610.00. *See*: *Amended Chapter 13 Plan*, Docket No.19 and *Trustee's Financial Report* dated 03/23/2023 for Case No. 18-04636 ESL13.

14. The Debtor's tax return for the year 2019 reflects income in the sum of $28,967 or the sum of $2,413.92 gross monthly income, working as a School Nurse for the Puerto Rico Department of Education. *See*: Debtor's 2019 tax return filed with the Treasury Department.

15. The Debtor's tax refund for the year 2019 in the sum of $677.00 was received by the Debtor in 2020. *See*: Debtor's 2019 tax return filed with the Treasury Department.

16. In January 2020 the Debtor obtained a job as a nurse working for the Puerto Rico Health Department. The Debtor's 2020 tax return reflects an annual salary of $34,651 or the sum of $2,887.58 gross monthly income. *See*: Debtor's 2020 tax return filed with the Treasury Department.

17. The Debtor's tax refund for the year 2020 in the sum of $766.00 was received by the Debtor in 2021. *See*: Debtor's 2020 tax return filed with the Treasury Department.

18. The Debtor's 2021 tax return reflects an annual salary of $37,800 or the sum of $3,150.00 gross monthly income, working as a nurse for the Puerto Rico Health Department. *See*: Debtor's 2021 tax return filed with the Treasury Department.

19. The Debtor's tax refund for the year 2021 in the sum of $1,502.00 was received by the Debtor in 2022. *See*: Debtor's 2021 tax return filed with the Treasury Department, Exhibit "E".

20. During the life of the Plan the Debtor did not paid-in to the Plan nor did she request Court authorization prior use of the funds from her tax refunds (2018/$226, 2019/$677, 2020/$766 and 2021/$1,502. *See*: Docket Report for Case No. 18-04636 ESL13.

21. On November 08, 2022, (at month 50th of the Plan) the Trustee requested copies of the Debtor's tax returns for the years 2018, 2019, 2020 and 2021. See: *Trustee's Motion Requesting Order to Compel* (Docket No. 34).

22. On December 12, 2022, the Debtor sent to the Trustee copies of her tax returns for the years 2018, 2019, 2021 and 2022. See: *Debtor's Motion in Compliance with Order Granting Unopposed Motion*, (Docket No. 37).

23. On December 12, 2022, the Debtor filed a *Debtor's Motion Requesting Order Re: Ratification of the Use of Funds From 2018, 2019, 2020 and 2021 Tax Refunds*. See: *Debtor's Motion Requesting Order Re: Ratification of the Use of Funds from 2018, 2019, 2020 and 2021 Tax Refunds* (Docket No. 38).

24. On December 12, 2022, the Debtor filed *Amended Schedules "I" and "J"* to inform her actual income and expenses. *See*: *Amended Schedule "I" and "J"*, Official Forms 106I and 106J (Docket No. 39).

25. On December 19, 2022, the Chapter 13 Trustee filed a motion stating the Trustee's position and objection to the Debtor's request to retain tax refunds and requesting order. See: *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order* (Docket No. 42).

26. On February 02, 2023, the Debtor filed her Reply to the *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order*, Docket No. 42. *See*: *Debtor's Reply to Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order, Docket No. 42* (Docket No. 51).

27. On February 02, 2023, the Debtor filed a post-confirmation Plan modification, and *Amended Schedule "J"*, in the above captioned case. *See*: *Debtor's Motion for Post-*

*Confirmation Modification of Chapter 13 Plan* (Docket No. 49) and *Debtor's Amended Schedule "J"* Amended Form 106J (Docket No. 50).

28. On February 03, 2023, the Court Ordered the Trustee to state his position within 21 days as to the Debtor's reply (Docket No. 51) and on February 14, 2023, the Chapter 13 Trustee filed a *Trustee's Position In Compliance With Court Order*. See: *Order* (Docket No. 52) and *Trustee's Position in Compliance With Court Order*, (Docket No. 55).

29. On February 14, 2023, the Trustee filed an objection to the Debtor's proposed modified Plan. See: *Trustee's Objection to Proposed Plan Modification Under Section 1329*, Docket (No. 54).

30. On March 08, 2023, the Debtor filed her Reply to the *Trustee's Objection to Proposed Plan Modification Under Section 1329* (Docket No. 54) and to the *Trustee's Position In Compliance With Court Order* (Docket No. 55). *See*: *Debtor's Reply to the Trustee's Objection to Proposed Plan Modification Under Section 1329 (Docket No. 54) and to the Trustee's Position In Compliance With Court Order (Docket No. 55)* (Docket No. 51).

31. On March 23, 2023, the Debtor filed a post-confirmation Plan modification under Section 1329, in the above captioned case. The purpose of the proposed Plan modification is to state under Part 2, Section 2.1 that the Debtor will pay-in to the Plan, on or before month 60th of the Plan, the sum of $3,100.00 from the following sources: the Debtor's 2022 tax refund and family aid. *See*: *Debtor's Motion for Post-Confirmation Modification of Chapter 13 Plan*, Dated 03/23/2023.

**II. Issues before the Court:**

32. The Debtor respectfully states that the contested issues before the Court are the following:

a. whether or not a debtor that verbally disclosed an expected salary increase and structured her Plan payments on said expected new income, but failed to formally file the appropriate amended schedules to inform said income increase, is a "bad faith" debtor whose case should be dismissed; and

b. whether or not a debtor that used her tax refunds for "reasonable and necessary" expenses but forgot to request prior Court authorization for the use of these funds, must pay-into the Plan the full tax refunds amounts, without any legal recourse that would ratify or retroactively authorize the use of these funds.

### III. Argument:

**A. The Debtor is a "good faith" debtor under the "totality of circumstances" test.**

33. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed. 2d 956 (2007).

34. A lack of "good faith" by a debtor has been upheld as a cause or reason for conversion or dismissal pursuant to Section 1307(c). *In re Munoz Marquez*, No. 10-03882, 2011 WL 4543226, 2011 Bankr. LEXIS 3806 (Bankr.D.P.R. 2011).

35. The term "good faith" is not defined in the Bankruptcy Code; thus, the good faith inquiry is a fact intensive determination. *Cabral v. Shamban (In Re Cabral)*, 285 B.R. 563, 572 (B.A.P. 1st Cir. 2002), as cited in *In re Munoz Marquez*, *supra*. at page 9.

36. To determine whether a debtor has acted in good faith, "…[T]he courts engage in a multi-faceted analysis that is applied on a case-by-case basis". Virden, 279 B.R. 401, at407, as cited in *In re Sullivan*, 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005).

37. "Courts differ in their approach in determining a debtor's good faith, but the majority favor a totality of circumstances analysis". *In re Cabral*, 285 B.R. 563, 572, as cited in *In re Munoz Marquez, supra*.

38. " In applying the "totality of circumstances" test to determine whether a chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following nonexclusive list of factors: (1) the debtor's accuracy in stating his or her debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether or not he or she has attempted to mislead the court and whether he or she has made any misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be discharged in a chapter 7, and (6) the debtor's motivation and sincerity in seeking chapter 13 relief. Gonzalez Ruiz v. Doral Fin. Corp. (In re Gonzalez Ruiz), 341 B.R. 371, 383 (B.A.P. 1st Cir. 2006) citing In re Cabral, 285 B.R. at 573; In re Dicey, 312 B.R. 456, 459 (Bankr. D. N.H.2004); In re Virden, 279 B.R. 401, 408 (Bankr. D. Mass. 2002). *In re Munoz Marquez, supra.*, at page 9.

39. Other Courts have relied in another non-exhaustive list of factors to determine or define "good faith" under the "totality of circumstances" test, which factors are the following:

        a. the amount of the debtor's income from all sources;

        b. the living expenses of the debtor and his dependents;

        c. the amount of attorneys fees;

        d. the probable or expected duration of the debtor's chapter 13 plan;

        e. the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13;

        f. the debtor's degree of effort;

g. the debtor's ability to earn and the likelihood of fluctuation in his earnings;

h. special circumstances such as inordinate medical expenses;

i. the frequency with which the debtor has sought relief under the bankruptcy reform and its predecessors;

j. the circumstances under which the debtor has contacted his debts and has demonstrated bon fides, or lack of same, in dealings with his creditors;

k. the burden which the plan's administration would place on the trustee;

m. the extent to which claims are modified and the extent of preferential treatment among classes of creditors;

n. substantially of the repayment to unsecured creditors; and

o. other factors or exceptional circumstances. _In re Kitchens, 702 F.2d 885, at 888-89 (11th Cir. 1983)._

40. "...[A] finding of bad faith does not require fraudulent intent by the debtor." _Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005)._

41. "Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill directed at creditors, or that debtor was affirmatively attempting to violate the law- malfeasance is not a prerequisite to bad faith". _In re Sullivan_, at page 212.

42. "The purpose of the 'totality of circumstances test' lies in 'whether the debtor is attempting to thwart his creditors or is making an honest effort to repay them to the best of this ability". _In re Sullivan_, at page 212.

43. In the present case, the Debtor respectfully states and alleges that applying the "totality of circumstances" test to the facts in this case would result in a determination that

the Debtor has acted in "good faith".

44. The Debtor respectfully requests the Court to consider the following factors:

a. the Debtor is a "below median income debtor", thus there is no "disposable income" under CMI 11 U.S.C. Section 101(10A);

b. this is a zero ($0.00) "liquidation value" case;

c. the reason for the Debtor's bankruptcy filing is that the Debtor had had a "loss of income" since she had lost her full-time job and as of the date of the filing of the Chapter 13 case the Debtor was working a part-time job as a "cashier" at a local supermarket;

d. this is the Debtor's first and only bankruptcy case;

e. the Debtor's proposed/confirmed Chapter 13 Plan provides for a "step-up" ($300 to $610) based on an expected increase in the Debtor's income;

f. at the 341 meeting the Debtor disclosed that she was in the process of obtaining a new job as a "nurse" since she had recently obtained a college degree which would allow her to increase the Plan payments to the Trustee;

g. the Debtor did commence working at a new job as a "school nurse" with the Department of Education of Puerto Rico and continued working as a part-time cashier until December 2018;

h. the Debtor worked in 3 different jobs during the year 2018 earning a total of $15,137.00 in income from these 3 sources for 2018;

i. the Debtor's proposed Plan was favorably recommended by the Chapter 13 Trustee and Plan was confirmed by the Court;

j. in October 2019, the Debtor increased her Plan payment from $300.00 to $610.00;

k. the Debtor earned the following gross incomes for the years 2019/$28,967; 2020/$34,651; 2021/$37,800 and 2022/$38,806;

l. the Debtor sent to the Chapter 13 Trustee copies of all of her tax returns for the years 2018, 2019, 2020, 2021 and 2022;

m. the Debtor is committing a 23% of her net monthly income ($2,665.52) to pay a $610 Plan payment: $610/$2,665.52;

n. the Debtor sent to the Chapter 13 Trustee copies of her actual salary pay stubs and copy of the Debtor's 2022 tax return, including the W-2 Forms requested by the Trustee;

o. during the life of the Plan the Debtor received tax refunds which are: 2018/$226, 2019/$677, 2020/$766 and 2021/$1,502;

p. during the life of the Plan the Debtor did not paid-in to the Plan nor did she request Court authorization prior use of the funds from her tax refunds;

q. the Debtor requested a ratification or a retroactive authorization of the use of the funds from her tax refunds stating that the same were used for "reasonable and necessary" expenses which were unforeseen, and which expenses the Debtor has evidenced with receipts and/or paid invoices;

r. the Debtor admits that in her best effort to succeed in her Chapter 13 case, she did incur in certain involuntary errors and/or omissions as follows: the Debtor failed to immediately and/or contemporaneously file amended schedules to inform her new jobs and/or new incomes, failed to immediately

after commencing in a new job increase her Plan payments from $300 to $610; forgot to submit to the Trustee copies of her tax returns immediately after filing the same with the Treasury Department, forgot to request Court authorization prior use of the funds from her tax refunds, and missed certain Plan payments and/or paid partial payments to the Plan ($600 instead of $610);

s. the Debtor has made her best effort to mend and correct the aforementioned errors and omissions by filing amended schedules "I" and "J" to disclose her actual income and expenses, submit to the Trustee copies of actual pay-tubs, submit to the Trustee copies of all her tax returns filed with the Department of Treasury (2018, 2019, 2020, 2021, and 2022, including the 2022 W-2 Forms) and file with the Court a request for the ratification or retroactive authorization for the use of the funds received from her tax refunds, evidencing said expenses paid with said tax refunds;

t. the Debtor also filed a post-confirmation modified Plan to increase the amount of her Plan payments ($610 to $743) to make up on arrearage asserted by the Trustee and to propose an additional payment in the sum of $2,790.00 to make up on the failure to increase the Plan payment at month 4th of the Plan from $300 to $610;

u. during the life of the Plan and from 2018 through 2023 there have been other factors that the Court should consider when finding that the Debtor has acted or not in "good faith" in the present case;

v. the Debtor requests the Court to consider other extraordinary mitigating

factors in applying the "totality of circumstances" test which specifically occurred during the life of the Debtor's plan, and which may reasonably explain, in part, the "errors and omissions" incurred by the Debtor in the present case. These other factors are the 2019 earthquakes affecting the residents in Puerto Rico, the 2020 COVID-19 pandemic and the increase in the CPI (consumer price index) which effectively increased the costs for basic goods and services such as food, transportation, utilities and other services.

**B. The Debtor's proposed retention of the tax refunds is not indicative of "bad faith" since the Debtor has proven that an actual need exists that requires the retention of these funds.**

45. It is fair to state that in order to succeed in a Chapter 13 case, a debtor must have some flexibility in her budget. See: <u>In re Morales, 563 B.R. 867, at 875 (Bankr. Eastern D. Ill. 2017)</u>.

46. Citing the Code's "equitable concerns" the Court in the case of <u>In re Ramos, 494 B.R. 181 (Bankr. D. P.R. 2013)</u> held that under "... equitable concerns within the bankruptcy code are flexible and permit chapter 13 debtors to retain some amount of an income tax refund. [T]he equitable concern within the bankruptcy code is prompted by the concern that the debtor may require some cushion *quantum meruit* – as much as she deserves against unanticipated expenses and life emergencies that may arise *de die in diem* – from day to day. [T]he cushion thus exists to provide some flexibility as the debtor attempts to create a budget for the duration of a three-to-five year plan. <u>In re Michaud, 399 B.R. 365 (Bankr. D.N.H.2008)</u>." <u>In re Ramos</u>, at 187.

47. In the present case it is undisputed that the Debtor's confirmed Plan provides for the tax refunds received by the Debtor during the life of the Plan are to be used to fund the

plan and that the Debtor to seek Court's authorization prior to any use of the funds from the tax refunds.

48. The abovementioned Plan provision establishes that: (1) a Debtor's tax refund is "disposable income" to be paid-in to the Plan to increase the Plan's funding and (2) to exclude said funds from the "disposable income" definition/classification, the Debtor must request the Court to make an equitable finding that the full or partial portion of a tax refund may be used by the Debtor as a cushion for an unanticipated expense and/or a life emergency. *In re Ramos*, at 187-88.

49. In the present case, the Debtor is requesting the Court to authorize and/or ratify the use of the funds received by the Debtor form her tax refunds for "reasonable and necessary" expenses, which are unanticipated expenses that arose day to day, during the Debtor's five-year Plan. A finding of such nature hinges upon the specific circumstances in the present case.

50. As previously stated, the Debtor received the following tax refunds during the life of the Plan: 2018/$226, 2019/$677, 2020/$766 and 2021/$1,502.

51. In her *Debtor's Motion Requesting Order Re: Ratification of the Use of Funds From 2018, 2019, 2020 and 2021 Tax Refunds* (Docket No. 38), the Debtor alleged and stated that due to an error/involuntary omission she had used to funds from the tax refunds for "reasonable and necessary expenses" having forgotten to request Court authorization prior used of these funds.

52. In her motion requesting ratification of the use of said tax refunds, the Debtor submitted evidence that demonstrates how these funds were used as follows: the 2018 tax refund in the sum of $226 received by the Debtor in 2019 was used to purchase a " TCL Roku

TV/TV Mount/Onn Mouse"; the 2019 tax refund in the sum of $677 received by the Debtor in 2020 was used to purchase a MacBook Air Computer; the 2020 tax refund in the sum of $766 received by the Debtor in 2021 was used to pay for car repairs; the 2021 tax refund in the sum of $1,502 received by the Debtor in 2022 was used to pay for house repairs.

53. As above described, it is fair to state that the Debtor used the funds from her tax refunds to assist her with paying for unexpected expenses that invariably occur in chapter 13 cases. (For example, the MacBook Air Computer was used after the COVID lockdown to work remotely.)

54. "…[M]any chapter 13 budgets as proposed are tight in that a debtor has little room to pay an unanticipated expense without the availability of excess funds. As such, this Court determined that allowing a debtor to keep some of the debtor's tax refund enhances the prospect of a debtor completing a chapter 13 plan." _In re Diaz_, 586 B.R. 588, 595 (Bankr W.D. Texas 2018).

55. It is the Debtor's position that the modest amounts of the tax refunds received by the Debtor during the life of the Plan were justifiably used for "reasonable and necessary" expenses, that these expenses are not expenses that occur on a monthly basis but that occur less frequently, and that the same are legitimate and necessary.

56. "…[T]his court has observed that debtors commonly pay certain expenses at the time they receive tax refunds. Car repairs need to be attended to, children need new shoes, certain home repairs are required, and these are frequently the subject of motions to modify the plan. The court has also observed that if the expenses are legitimate and necessary, the Trustee is usually agreeable." _In re Blake_, 565 B.R. 871, 876 (Bankr. N.D. Ill. 2017).

57. In the present case, the Trustee is not in agreement with the Debtor and opposes the Debtor's request for the Court to ratify the use of these funds as "reasonable and necessary".

**C. The Trustee's opposition and objections to the retention of the tax refunds by the Debtor and to the Debtor's post-confirmation modified Plan.**

58. The Trustee's position that the Debtor failed her ongoing obligation to disclose changes in circumstances, specifically an increase in her [the Debtor's] salary income and that, consequently, a Debtor's motion requesting authorization to retain tax refunds should be denied and the Court to Order the Debtor to show cause why the present case should not be dismissed, is not based on equitable grounds.

59. The Debtor respectfully states that the Chapter 13 Trustee's position fails to consider the totality of circumstances in this case including the best efforts the Debtor has shown in trying to successfully complete her Chapter 13 Plan.

60. The Trustee alleges that the Debtor did not disclose a change in her circumstances and that this undisclosed income would have brought an increase in the Plan payments that would have paid general unsecured creditors in full (100%) and that failure disclose is sufficient "cause" to enter an Order to show cause as to why the present case should not be dismissed. *See*: *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order*, at pages 2-3, Docket No. 42; the *Trustee's Objection to Plan Modification Under Section 1329*, pages 2-3 Docket No. 54; and the *Trustee's Position in Compliance with Order*, at page 2-3, Docket No. 55.

The Trustee fails to consider that the Debtor's testimony given under oath at the 341 meeting did disclose that she was to have an increase in her income since she had

completed a college degree and that the proposed Plan "step-up" was based on said increase.

The Debtor admits that due to an error/involuntary omission, she [the Debtor] did not file the appropriate *Amended Schedule I* contemporaneously with obtaining her new income. On the other hand, the Trustee's argument fails to acknowledge that the Trustee commenced receiving an increased Plan payment of $610.00 and did not request the Debtor to amend her Schedules accordingly. *See*: Section 1302(b) (4), (5), 11 U.S.C. Section 1302(b) (4), (5), whereby the Code assigns a legal obligation to a Trustee to assist the debtor in the performance of the Plan and ensure that the debtor commences making timely payments.

It is not until month 50th of the Plan that the Trustee requests the Debtor to submit her tax returns for the years 2018, 2019, 2020 and 2021, and consequently requests the Court to issue an Order to the Debtor to show cause as to why the present case should not be dismissed since the Debtor had failed to disclose a "change in circumstances".

On December 12, 2022, the Debtor filed *Amended Schedules I and J*, Docket No. 39, which shows that the Debtor's actual income is the highest income the Debtor has received during the life of the Plan. The Debtor's *Amended Schedules I and J*, Docket No. 39, clearly show that the Debtor is living under a tight budget, which allows her to live modestly and pay the required Plan payments to the Trustee.

Therefore, it is reasonable to state that should the Debtor have amended her schedules and formally disclose the different jobs and incomes she has had during the life of the Plan (which the Debtor admits having failed to do due to an error/

involuntary omission), the Debtor would still be paying the same amount to the Plan, which is calculated at a 23% of her net monthly income. *See*: Debtor's *Amended Schedules I and J*, Docket No. 39.

61. The Trustee alleges that the Debtor's income increased "exponentially" and thus, there is a "disposable income" which is property of the bankruptcy estate, and which was not disclosed by the Debtor. *See*: *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order*, at pages 2-3, Docket No. 42; the *Trustee's Objection to Plan Modification Under Section 1329*, pages 2-3 Docket No. 54; and the *Trustee's Position in Compliance with Order*, at page 2-3, Docket No. 55.

The Trustee states that the Debtor's income increased "exponentially" (the Debtor's original Schedule "I" shows a gross monthly income of $1,224.56 as a cashier working part-time and as of December/2022 the Debtor has a gross monthly income of $3,075.85).

However, the Trustee fails to consider that it is undisputed that the Debtor's Plan payment also increased "exponentially" from $300 to $610 per month.

62. The Trustee also alleges that the Debtor's post-confirmation modified Plan was filed in bad faith since the Debtor failed to consider that the Plan "step-up" should have commenced in month 2 and instead of month 13 of the Plan. The Trustee adds that the Debtor's failure to increase the Plan in month 2 deprived the estate of at least $3,410.00. *See*: *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order*, at pages 2-3, Docket No. 42; the *Trustee's Objection to Plan Modification Under Section 1329*, pages 2-3 Docket No. 54; and the *Trustee's Position in Compliance with Order*, at page 2-3, Docket No. 55.

The Debtor admits that the Plan "step-up" should have been at month 4 of the Plan and that would have brought an additional sum of $2,790.00 to the estate ($310 x 9 months). The Debtor is calculating the month of the "step-up" on the grounds that although the Debtor did commence working at her new job with the Department of Education on October 23, 2018, the Debtor did not receive her first pay-check until November 30, 2018 (the second bi-monthly pay period/"segunda quincena"). Thus, since the Debtor filed her Chapter 13 case on August 16, 2018, her first Plan payment became due on September 16, 2018 and her 4th payment became due on December 16, 2018. The Debtor could not have increased her Plan payment at month 2 as argued by the Trustee because the Debtor had not commenced receiving her new salary at month 2 of the Plan.

The Debtor's proposed post-confirmation modified Plan dated 03/23/2023 provides for an additional payment of $2,790.00 to cover for the "gap" between month 4th and 13th that the Debtor continued making $300.00 payments to the Plan. The Debtor's Plan modification cures this issue since additional funds in the sum of $2,790.00 are to be paid to the Plan for an increase in the distribution to the general unsecured creditors. See: *Debtor's Motion and Notice of filing a Post-confirmation Modification of Plan under Section 1329*, Part 2, Section 2.1, Dated 03/23/2023.

63. The Trustee also argues that the Debtor's tax returns reveal that "...Debtor was among the blessed people who were economically benefitted during the COVID pandemic ... and this case "...has a debtor who has been comfortable during the life of the case administering a considerable amount of unreported income in detriment of the estate". *See*: the *Trustee's Objection to Plan Modification Under Section 1329*, page 3 Docket No. 54.

The Debtor respectfully replies to the Trustee's argument concerning the COVID incentives/bonus that it is undisputed that any income received from this source is not "income" for bankruptcy purposes.

The Debtor also objects to the Trustee's characterization of the COVID incentives as a "blessing" received by the Debtor. The term "blessed" is a religious concept that "...is a matter which lies solely between man and his God...". *Reynolds v. United States*, 98 U.S. 145 (U.S. Supreme Court 1879).

The Debtor respectfully states that the issue of whether or not a debtor is "blessed" by receiving a COVID incentive is a matter which has no evidentiary support and thus the same is unwarranted. Rule 9011 of the Federal Rules of Bankruptcy Procedure.

On the other hand, it is to be noted that the Debtor is one of the "heroes" that during the COVID pandemic was a committed nurse administering COVID vaccines to hundreds of people residing in Puerto Rico.

In this situation, we, the people of Puerto Rico are the ones that should feel "blessed" that persons like the Debtor were sacrificing themselves in times of a pandemic, exposing themselves and their families to the COVID virus and leaving their families aside to attend to the emergency produced by this pandemic.

64. The Trustee also objects to the Debtor's request to retain the 2018-2021 tax refunds on the grounds that said refunds are property of the estate, that the Plan's provision concerning the tax refunds is binding and that the Debtor's request to ratify is evidence of the Debtor's failure to comply a Plan provision she [the Debtor] voluntarily included in the Plan. *See*: *Trustee's Position and Objection to Debtor's Motion Requesting Order in Docket No. 38 and Request for Order*, at pages 2-3, Docket No. 42; the *Trustee's Objection to Plan*

*Modification Under Section 1329*, pages 2-3 Docket No. 54; and the *Trustee's Position in Compliance with Order*, at page 2-3, Docket No. 55.

The Debtor respectfully states that it is fair to state that the Debtor used the funds from her tax refunds to assist her with paying for unexpected expenses that invariably occur in chapter 13 cases.

In her motion requesting ratification of the use of said tax refunds, the Debtor submitted evidence as to how these funds were used as follows: the 2018 tax refund in the sum of $226 received by the Debtor in 2019 was used to purchase a " TCL Roku TV/TV Mount/Onn Mouse"; the 2019 tax refund in the sum of $677 received by the Debtor in 2020 was used to purchase a MacBook Air Computer; the 2020 tax refund in the sum of $766 received by the Debtor in 2021 was used to pay for car repairs; the 2021 tax refund in the sum of $1,502 received by the Debtor in 2022 was used to pay for house repairs. *See*: *Debtor's Motion Requesting Order Re: Ratification of the Use of Funds From 2018, 2019, 2020 and 2021 Tax Refunds* (Docket No. 38).

The Debtor admits that due to an error/involuntary omission the Debtor failed to timely (prior to the use of the funds) file a request for the Court to authorize the use of the funds from Debtor's tax refunds received during the life of the Plan.

The Debtor respectfully states that the Debtor is living within a tight budget with little room to pay an unanticipated expense without the availability of excess funds. The Debtor is respectfully requesting the Court to allow the Debtor to keep the debtor's tax refund by ratifying the used of the same, equitably aiding the Debtor in successfully completing her Chapter 13 Plan, in the present case.

## IV. Conclusion

65. The Debtor respectfully states that under the specific facts surrounding this case and the "totality of circumstances" test, the Debtor is a "good faith debtor" and her case should not be dismissed on "bad faith" grounds based on the Debtor's failure to file amended schedules contemporaneously to the Debtor's "change in circumstances".

66. In the present case, it is undisputed that the Debtor's errors/involuntary omissions are not indicative of a Debtor attempting to thwart her creditors, instead that the undisputed facts surrounding this case clearly show that the Debtor is making an honest effort to repay them to the best of her ability.

67. The Debtor respectfully states that a dismissal of the Debtor's Chapter 13 case at month 55 of the Plan on the grounds that the Debtor allegedly defaulted with the terms of the confirmed Plan, is not just.

68. To deny the Debtor completion of the Plan under the present circumstances is not equitable. See: _In re Carter_, 638 B.R. 379, 402 (Bankr. N.D. Ill. 2022).

69. The Court has discretion to craft equitable remedies, thus allowing the Debtor to keep the tax refunds received during the life of the Plan by retroactively authorizing their "reasonable and necessary" use.

70. Based on the above stated, the Debtor respectfully requests the Court grant the Debtor's request for the ratification of the use of funds from the tax refunds (Docket No. 38) and approve/confirm the Debtor's proposed post-confirmation Plan modification dated 03/23/2023, in the above captioned case.

**WHEREFORE**, the Debtor, through her undersigned attorney respectfully requests that for the above stated reasons this Honorable Court grant the Debtor's request for the

ratification of the use of funds from the tax refunds (Docket No. 38) and approve/confirm the Debtor's proposed post-confirmation Plan modification dated 03/23/2023, in the above captioned case.

**I CERTIFY** that on this same date a copy of this motion was filed with the Clerk of the Court using the CM/ECF filing system which will send notice of same to: the Chapter 13 Trustee, Jose Ramon Carrion Morales, Esq., Esq., and to all CM/ECF participants; I also certify that a copy of this motion was sent via US Mail to the Debtor, Michelle Marie Santos Robles, PO Box 627 Gurabo PR 00778.

**RESPECTFULLY SUBMITED**, in San Juan, Puerto Rico, this 23rd day of March 2023.

_/s/ Roberto Figueroa Carrasquillo_
USDC #203614
RFIGUEROA CARRASQUILLO LAW OFFICE PSC
ATTORNEY FOR the DEBTOR
MICHELLE MARIE SANTOS ROBLES
P.O. BOX 186 CAGUAS PR 00726
TEL NO 787- 744-7699; 787-963-7699
Email: rfc@rfigueroalaw.com